Argued December 5, 1974, affirmed as modified January 23, 1975

GINDHART, *Appellant, v.* SKOURTES ET UX,
*Respondents.*

530 P2d 827

*James E. Auxier,* Portland, argued the cause and filed briefs for appellant.

*William E. Hurley* of Bernard, Hurley, Hodges & Kneeland, Portland, argued the cause for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

O'CONNELL, C. J.

This is a suit in equity brought by plaintiff, acting through his conservator, to rescind a land sale contract and an option agreement on the ground that plaintiff lacked sufficient mental competence to conduct business at the time of their making. Defendants denied the substantive allegations of the complaint and counterclaimed for a decree ordering specific performance of the land sale contract, declaring the option valid and enforceable, and awarding damages for timber removed from the property after execution of the contract. After trial of the factual issues thus raised, the court entered a decree dismissing plaintiff's complaint and granting for the most part the relief sought by defendants. Plaintiff* appeals, assigning as error each of the trial court's rulings which are embodied in the decree.

The plaintiff's primary assignment of error is

---

* Mr. Gindhart died during the pendency of this appeal which is now maintained by Edna Baker, his conservator, who was subsequently appointed personal representative.

that the court erred in dismissing the complaint because a preponderance of evidence established that plaintiff was of such weak understanding as to be incompetent to transact business and also that the transaction was grossly unfair. The parties agree that this is the proper test for the voidability of a contract for incompetence of an adult party,[1] and disagree only as to whether the transactions in this case come within the rule.

The pertinent facts are as follows. Plaintiff, a 75-year old widower, was the legal owner of approximately 40 acres of land in Washington County within commuting distance of Portland's city center. For many years he farmed and made his home upon this land. In January of 1970, he offered 20 acres of his farm for sale at $65,000 by listing it with a real estate firm. This parcel, which is the subject of the land sale contract under consideration, is unimproved by buildings. It contains a walnut orchard, about seven acres of timber, and is at least partially "view property." It suffers, however, from insufficient public road frontage to allow subdivision under applicable regulations and has no established water supply.

The property was listed for over two years with real estate firms which appear to have used the normal techniques of obtaining a buyer. The property was advertised and shown to a number of prospective purchasers. None, however, made an offer until defendants did so in 1972. The real estate agents who handled the property for plaintiff testified that the lack of offers was attributable to the limited access to the parcel and to the lack of water.

---

[1] See Scovill v. Barney, 4 Or 288, 292 (1872).

In 1972, the defendants inspected the property and determined that it met their needs for a large home site but that the asking price of $65,000 was excessive. They made a formal written offer of $44,000, to be paid over ten years. The plaintiff considered this offer for about a week and then refused it, stating that he wanted at least $50,000 and, because of his age, a shorter payment period. Thereafter the defendants submitted an offer of $48,000, to be paid in four annual installments. Plaintiff accepted this offer. There were several other terms of the agreement, including the right to the 1972 walnut crop, a provision as to easements and water to be supplied for a time by the seller, all of which indicate a fairly complicated and extensively negotiated agreement between the parties. During the negotiations leading up to the sale, defendants requested an option on ten additional acres at a somewhat higher price. Plaintiff consented to give the option in return for $1,000.

Since it appeared to the realtor handling the sale that the transaction was somewhat more complex than the average land sale, he became concerned because neither party was represented by legal counsel. The realtor therefore arranged a meeting between the parties to be attended also by legal counsel retained by the real estate firm to represent its interests. At this meeting, attended by Mr. Gindhart, Mrs. Skourtes, the real estate broker and his counsel, the attorney read each term of the contract and asked the parties if they understood. The attorney, the broker and Mrs. Skourtes all testified that plaintiff asked questions, responded to interrogatories and acted generally as if he understood.

The closing of the sale was held in an escrow office.

The escrow company employees who handled the closing testified that plaintiff asked questions evidencing an understanding of the transaction and did or said nothing to cast doubt on his competence.

After the closing, plaintiff returned to his home where he suffered a stroke brought on by arteriosclerosis. It is plaintiff's contention that the sclerotic condition which unquestionably preceded the stroke adversely affected his brain oxygenation and reduced his mental competence. Although there is evidence that this *may* have been the case, it is by no means clear that this was so. Those dealing with plaintiff before his stroke, including his regular doctor and his family, apparently deemed him competent at the time.

Plaintiff contends that the contract price for plaintiff's land was one that no man in full possession of his faculties would have made. The fact that no other offer had been received in over two years of active attempts to sell the property would indicate that the original asking price was excessive. A comparison of comparable sales in the area indicate the sale price to be reasonable. The realtors who acted for plaintiff himself testified that the price was fair. The only counter evidence is the testimony of a relatively inexperienced real estate salesman hired to appraise the property for purposes of this litigation. He testified that the value of the property was $3,500 per acre. He, however, based this on the development of the property as a residential subdivision requiring various zoning changes, variances, and water district annexations, the cost of which he apparently did not include in making his estimate. He also made assumptions about the availability of water and road access inconsistent with all other evidence in the record. We

conclude that the evidence does not establish plaintiff's incompetence to enter into the sale and option transaction.

■ Plaintiff's second assignment is that the court erred in granting specific performance of the contract of sale. In support of this contention he argues that defendants have an adequate remedy in an action of ejectment and are therefore not entitled to equitable relief. This contention is without merit. Plaintiff holds legal title. An action of ejectment would not allow an order requiring the conveyance of legal title to defendants. Thus, the remedy at law is inadequate and therefore defendants are entitled to the equitable relief granted them below.

■ Plaintiff also assigns as error the award of attorney's fees to defendants. His argument in support of that contention is admittedly dependent upon a finding that the defendants are not entitled to specific performance. Having found that specific performance is appropriate, we affirm the award of attorney's fees as well.

Plaintiff also contends that the court erred in granting specific performance of the option because defendants have not yet exercised the option by tendering the purchase price. Defendants admit that they requested only a decree declaring the option valid. This is all that the letter opinion of the trial court did and the error is mere surplusage in the decree as drafted by the defendants' attorneys. We therefore affirm that portion of the decree declaring the option valid, modified by striking the clause granting specific performance.

Plaintiff's final assignment of error is that the

court erred in awarding defendants damages for the cutting of trees by plaintiff after the sale. Plaintiff contends that there is insufficient evidence that plaintiff cut any of the trees. Defendants introduced the testimony of Mr. Skourtes and of a timber appraiser that eight trees were removed from the land subsequent to the sale to defendants. Mr. Skourtes testified that tracks on the ground indicated the trees were dragged by tractor toward plaintiff's house.

Plaintiff contends that this does not support the conclusion that plaintiff cut the trees or had them cut. The plaintiff did not testify. His daughter and son-in-law, Mr. and Mrs. Baker, who lived in the plaintiff's home during the period when the trees were cut, both testified as to various other matters but offered no explanation for the disappearance of the trees. It is difficult to believe that they would not have known of the cutting of the trees by strangers if that had been the case. The trees were cut and dragged by tractor toward the dwelling in which the Bakers were living. It was shown that they had access to a tractor. It is more probable than not to assume that either they or plaintiff cut the trees in the absence of further explanation. We therefore affirm the award of damages for the cutting and removal of the timber.

. The decree, with the modification indicated above, is affirmed.